IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILMA ORMBSY, § | | |
|     Plaintiff, § | | |
| § | | |
| v. § | | |
| § | CIVIL ACTION NO. _____ | |
| ALLSTATE INSURANCE COMPANY, § | | |
|     Defendant. § | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, WILMA ORMSBY ("Ormsby" or "Plaintiff") by and through its attorneys, Merlin Law Group, P.A., brings this complaint against Allstate Insurance Company (collectively referenced herein as "Allstate" or "Defendant") for breach of the flood insurance contract issued by Allstate pursuant to the National Flood Insurance Program ("NFIP"). Plaintiff alleges the following upon information and belief:

## PARTIES

1. Plaintiff, Wilma Ormsby, is an individual who resides and is domiciled in Texas in this judicial district. Plaintiff's property, located at the address below, (the "Property") was insured by Allstate against flood damages:

| Wilma Ormsby | 4434 Wigton Drive | Houston | TX. | 77096 | Policy No. # 4806429051 |
|---|---|---|---|---|---|
| | | | | | |

2. Defendant Texas Allstate Insurance Company is a fully owned subsidiary of Allstate Insurance Group, which was and is a private insurance company incorporated under the laws of Illinois, doing business in Texas with its principal place of business located at 3075 Sanders Road, Suite H1a, Northbrook, Illinois 60062. Allstate is a "Write Your Own" ("WYO") insurance company participating in the National Flood Insurance Program ("NFIP") pursuant to the National

1

Flood Insurance Act ("NFIA" or "the Act"), as amended 42 U.S.C. § 4001. Pursuant to 44 C.F.R. Section 62.23(d) and (i)(6), Allstate was and is responsible for arranging the adjustment, settlement, payment and defense of all claims arising under the Policy.

## JURISDICTION

3. This action arises as a result of Defendant's denial and/or underpayment Plaintiff's flood insurance claim governed by the flood insurance Policy that Defendant issued to Plaintiff in its capacity as a WYO company under the National Flood Insurance Act ("NFIA" or "the Act"), federal regulations and common law, and the flood insurance Policy. The Policy covered losses to Plaintiff's property ("Property") and personal property ("Contents") located in this judicial district.

4. Federal courts have exclusive jurisdiction pursuant to 42 U.S.C. § 4072 over all disputed claims under an NFIP Policy issued pursuant to the Act, without regard to the amount in controversy, or whether brought against the government or a WYO company.

5. This Court has original, exclusive jurisdiction to hear this action pursuant 42 U.S.C. § 4072 because the insured Property is located in this judicial district.

6. This Court also has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action requires the application of federal statutes and regulations and involves substantial questions of federal law.

## VENUE

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 4072 because it is where Plaintiff's Property is located and where a substantial part of the events at issue took place.

**FACTUAL ALLEGATIONS**

8.      Plaintiff, Wilma Ormsby, has owned and lived in her home at 4434 Wigton Drive, Houston, Texas 77096 for over thirty (30) years. The Ormsby home and personal property within the home was well maintained and nicely furnished.

9.      Defendant Allstate ("Defendant" or "Allstate") sold and issued a Standard Flood Insurance Policy to Plaintiff covering Plaintiff's home for up to $220,000.00 and her personal property ("Contents") for up to $73,500.00 in coverage.

10.     On or about August 27, 2017, Hurricane Harvey (the "Storm") made landfall in Texas, causing widespread devastation and severely damaging homes and businesses throughout the Houston metropolitan area. Hurricane Harvey caused unprecedented levels of rainfall, which led to severe flooding that overwhelmed the Houston community. Plaintiff Wilma Ormsby's home and contents were inundated and destroyed by flood waters.

11.     On or by August 28, 2017, Plaintiff's Property was inundated by contaminated black flood waters, several feet of which flowed throughout the exterior & interior of her home and remained for days ultimately destroying her Property and Contents. The flood waters severely damaged and/or destroyed Plaintiff's flooring, walls, insulation, exterior, sheetrock, framing, doors, cabinets, and fixtures throughout the home, and her valued Contents, including but not limited to furniture, chairs, books, kitchen appliances and utensils, and closets full of clothes, shoes, towels and bed sheets were lost. The home was so damaged that Plaintiff had to move out of it completely and remains displaced today.

12.     All property, both personal property and real property, that suffered a direct-physical loss and was damaged by the contaminated flood waters must be fully repaired and/or replaced to a pre-flood condition.

13.     Plaintiffs submitted a claim to her insurer, Allstate for flood damage to her Property and Contents. Plaintiff duly performed and fully complied with all conditions of the Policy. On or about September 11, 2017, Allstate assigned Mark Jones ("Jones") and/or David Maylor ("Maylor") as the adjuster(s) entrusted to accurately adjust Plaintiff's claim and properly assess the flood damages. On or about September 15, 2017, Maylor inspected the Property and observed the extensive flood damage throughout Plaintiff's Property and Contents. Maylor drafted an estimate for the cost to repair and/or replace Plaintiff's flood damages. However, Maylor failed to apply and incorporate local Houston prices for the damage repairs. Further, Maylor's estimate grossly undervalued flood damaged items, and failed to include an adequate scope, as well as sufficient damage repair/replacement amounts. Similarly, rather than allowing for removal and replacement of flood damaged property per the Policy, Maylor's estimate only allowed for detaching, cleaning, and resetting the various fixtures (such as the toilets, sinks, and shower/tubs) in Plaintiff's restroom facilities that were submerged in black flood water for days. The aforementioned items are just a few examples of the significant pricing and scope discrepancies between what Maylor scoped and priced in the Allstate estimate, and those determined based on local Houston post-Harvey prices.

14.     Ultimately, rather than recommending a proper and sufficient payment under the terms of the Policy, FEMA, and the law otherwise, Allstate and its personnel severely undervalued, underestimated, and underpaid Plaintiff's flood claim.

15.     Allstate failed to properly ensure that its adjuster, Maylor, was properly trained in the evaluation and scoping of flood damages and failed to adequately oversee Maylor's work. This is evident in light of the fact that Allstate and/or Jones reviewed the photographs showing the severity of flood damages, and Maylor's estimate of the same, and then approved Maylor's subpar estimate

knowing that it failed to adequately scope and value Plaintiff's damages.

16. Allstate is ultimately responsible for the adjustment and assessment of Plaintiff's flood claim. Defendant Allstate accepted and adopted Maylor's inadequate assessment of Plaintiff's Property and Contents damage claim. Defendant Allstate totally failed to properly train Jones and/or Maylor, and ensure that they knew the proper assessment guidelines and knowledge needed to conduct a flood damage evaluation under the NFIA and Policy. Further, Defendant Allstate failed to exercise any oversight of Plaintiff's claim, Defendant Allstate failed to review the work of its assigned adjuster – as is evident by Defendant Allstate' carte blanche approval of Maylor's estimate without its own detailed investigation of the same. Ultimately, Defendant Allstate and its assigned personnel chose not to comply with the provisions and requirements of the Policy and NFIP's/FEMA's policies, rules, regulations, and guidelines, which resulted in Plaintiff being underpaid on their flood claim and damages.

17. Plaintiff Wilma Ormsby disagreed with Allstate's assessment and undervaluation of the her flood damages. Specifically, Plaintiff objected to Defendant Allstate's estimate and payment for reasons including: that Defendant's estimate and payment did not include or detail the full scope of covered flood damages and necessary repairs; damages and items were undervalued, omitted, or missing from Allstate's estimate; Allstate's adjuster used incorrect and/or inadequate pricing that did not accurately reflect the repair or replacement cost amounts and values in Houston after Harvey; and Defendant Allstate adopted incorrect, incomplete, and/or insufficient methods of repair as shown in Allstate's estimates.

18. As such, Plaintiff made several attempts to obtain a proper assessment and evaluation of the claim and flood damage, Plaintiff submitted to Allstate her sworn proof of loss with documents and photographs in support of the claim, damages, and amounts owed by Allstate under the Policy.

Plaintiff provided Allstate with: (1) additional representative photographs showing the condition of the property after the flood; and (2) a detailed estimate for the necessary repairs and replacement of Plaintiff's flood damaged Property; and a Contents Inventory among other items.

19. Thereafter, Plaintiff received a letter from Allstate stating that Plaintiff's sworn proof of loss was denied, and no additional payment would be tendered by Allstate.

20. Plaintiff suffered losses by and from the flood waters fiercely penetrating the insured Property/building and Contents, and Plaintiff has incurred and/or will incur significant expenses to repair and replace its flood-damaged Property.

### Defendant Allstate's Duties & Obligations

21. As stated above, the Federal Emergency Management Agency ("FEMA") and/or the National Flood Insurance Program ("NFIP") (collectively referred to as "FEMA/NFIP") enter into arrangements (the "Arrangement") with private insurance companies, also known as Write Your Own (WYO) Companies such as Defendant Allstate, to administer FEMA/NFIP flood insurance policies, and adjust and pay claims accordingly as required. *See* Exhibit A, pp. 3—4. Art. II.F.

22. As part of the WYO Companies Arrangement with the FEMA/NFIP, the WYO Companies, like Allstate, agree to adjust claims in accordance with their company claims handling standards and practices, as well as "with written standards, procedures, and guidance issued by FEMA or FIA relating to the NFIP and applicable Company." *See id.*, p. 4, Art. G.1; *see also*, 44 C.F.R. Section 62.23(i). Further, the WYO Company's claims department should verify "the correctness of the coverage interpretations and reasonableness of the payments recommended by the adjusters" by using its own "normal catastrophe claims procedures…[as] implemented in the event of a claim catastrophe situation." *Id*.

23. The WYO Companies and their agents get reimbursed from federal Treasury funds upon

presentment of a simple invoice for services related to their handling of a flood insurance claim. Homeowners and businessowners throughout our country, like Plaintiff here, who are already victims of catastrophic weather events like Hurricane Harvey, are taken advantage of and become victims a second time under this flood insurance scheme. These victims have limited recourse, if any at all. Here, Plaintiff Wilma Ormsby took significant steps in attempt to receive adequate compensation for its flood damages from her flood insurance carrier Defendant Allstate. Despite Plaintiff's attempts to be made whole, Defendant Allstate, its adjuster(s) and personnel failed to follow the policies, procedures, rules, and guidelines necessary when evaluating a flood insurance claim like Plaintiff's. Defendant Allstate's failure to fully comply with the well-established standards, extensive rules, regulations, and laws that govern it resulted in an improper handling of Plaintiff's claim and insufficient payment on Plaintiff's valid flood claim.

24.     As part of its Arrangement with the FEMA/NFIP, Defendant Allstate sold and issued a Standard Flood Insurance Policy (the "Policy") to Plaintiff to insure its Property and Contents located at the address shown above against physical damage by or from a flood event. There is no question as to the Policy being in full force and effect on the date of the incident referred to herein. There is also no question that Plaintiff paid all insurance premiums when due and complied with all conditions precedent.

25.     Defendant Allstate unjustifiably failed and/or refused to perform its obligations under the Policy and wrongfully denied and/or unfairly underpaid or limited the payment on Plaintiff Wilma Ormsby's claim. Defendant Allstate has unfairly persisted in improperly underpaying the claim despite being provided with extensive evidence as to the actual amount of damages incurred, and the necessary repair and replacement amounts.

## **CLAIM FOR RELIEF**

## **BREACH OF CONTRACT**

26.  Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

27.  Plaintiff Wilma Ormsby and Defendant Allstate entered into a contract when Plaintiff Ormsby purchased, and Defendant Allstate issued the flood insurance Policy.

28.  The Policy, at all times relevant and material to this case, provided flood insurance coverage to Plaintiff Wilma Ormsby for, among other things, direct physical damage caused by flood to Plaintiff's Property and Contents located at the address ascribed above.

29.  Plaintiff fully performed under the contract by paying all premiums when due and cooperating with Defendant Allstate regarding Plaintiff's claim. Plaintiff complied with all conditions precedent to Plaintiff's recovery herein, including appropriate and adequate demands, or Defendant Allstate waived or excused such conditions precedent.

30.  Defendant Allstate failed to perform and materially breached the insurance contract when: (1) Defendant Allstate's estimate and payment did not include or detail the full scope of covered flood damages and necessary repairs; (2) Defendant Allstate adopted an estimate that used incorrect and/or inadequate pricing, which did not accurately reflect the repair or replacement cost amounts and values in Houston after Harvey; (3) Defendant Allstate failed to follow and implement the proper procedures, rules, laws, regulations, and guidelines in its assessment and valuation of Plaintiff's flood damage; and (4) Defendant Allstate undervalued Plaintiff's damages, omitted payment for covered damages, and thereby underpaid Plaintiff's claim by the amount it owed Plaintiff Wilma Ormsby for flood damages to her Property and Contents.

31.  Plaintiff reserves the right to seek leave of the Court to amend this Complaint at any such time as it may ascertain other acts and omissions actionable as breaches of the duty of good faith

and fair dealing, or otherwise.

32. By virtue of its various breaches of contract, including its failure to fully reimburse Plaintiff for the covered losses, Defendant Allstate is liable to and owes Plaintiff for the actual damages Plaintiff sustained as a foreseeable and direct result of the breach, all costs associated with recovering, repairing and/or replacing the covered property, together with interest and all other damages Plaintiff may prove as allowed by law.

## **CONDITIONS PRECEDENT**

Plaintiff has satisfied all conditions precedent for bringing this action.

## **PRAYER**

WHEREFORE, the Plaintiff Wilma Ormsby respectfully requests Defendant to answer herein and that the Court enter judgment in Plaintiff's favor for such amount of damages as Plaintiff may prove at trial as provided by law, and other and further relief the Court may deem just and proper.

Respectfully Submitted,

**MERLIN LAW GROUP, P.A.**

*/s/ Rene M. Sigman*
***Rene M. Sigman, Esq.**
Fed. Bar No. 900984
**Emily B. Marlowe, Esq.**
Fed. Bar No. 2248224
515 Post Oak Blvd. Suite 510
Houston, Texas 77027
Tel: (713) 636 8880
RMSdocket@merlinlawgroup.com

**ATTORNEYS FOR PLAINTIFFS**